Ronald L. REED, Petitioner-Appellant,

v.

Charles L. WOLFF, Jr., Warden,
Respondent-Appellee.

No. 74–1768.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1975.

Decided March 13, 1975.

J. Patrick Green, Omaha, Neb., for petitioner-appellant.

Terry R. Schaaf, Asst. Atty. Gen., Lincoln, Neb., for respondent-appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

This case comes to us on appeal from a denial of a petition for writ of habeas corpus. The petitioner Ronald L. Reed was convicted after a jury trial in the district court for Douglas County, Nebraska of crimes arising out of the attempted robbery of the Ames Plaza Bank in Omaha on October 20, 1970.[1] His conviction was affirmed upon appeal to the Supreme Court of Nebraska,[2] and his petition for habeas relief was denied by Judge Denny of the United States District Court for the District of Nebraska.

The principal issue before us concerns the admission of evidence relating to a motor vehicle operator's license issued to a Dana W. Hudson of 4267 Wirt Street in Omaha, the application for which, bearing Reed's fingerprint, had been completed in Omaha on the date of the offenses charged. The petitioner vigorously urges that license was unconstitutionally seized, and that it and its "fruits" should have been suppressed.[3] The respondent, while not conceding unlawful search and seizure, argues principally that any error was harmless error "beyond a reasonable doubt" as found by the Supreme Court of Nebraska.[4] We agree with the respondent and affirm the denial of the writ.

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Specifically petitioner was convicted of 1) entry into a building with intent to rob or steal, 2) use of a firearm in the commission of a felony, and 3) shooting at William Tate with the intent to kill, wound or maim.

2. State v. Reed, 188 Neb. 815, 199 N.W.2d 707 (1972).

3. In outline, the grounds asserted are a lack of valid consent to search, a lack of a search warrant and a lack of a valid excuse justifying a search without a warrant.

4. State v. Reed, 188 Neb. 815, 817, 199 N.W.2d 707, 709 (1972), citing Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

■ Our disposition of the case necessitates that we set forth the evidence in some detail, for "Our judgment [on the question of harmless error] must be based on our own reading of the record and on what seems to us to have been the probable impact of the [challenged evidence] on the minds of an average jury."[5] The record is voluminous, involving some thirty witnesses and fifty exhibits.

On October 20, 1970 three men entered the Ames Plaza Bank in Omaha, one armed with a carbine, one with a shotgun, and the third with two revolvers. The security guard at the bank on duty at that time was William Tate, an Omaha police sergeant working part time at the bank. He testified that, feeling an object in his back, he looked around and saw a man he later identified as Reed dressed in a military uniform and carrying a carbine. He ordered Tate to the floor. As Tate moved, Reed moved around in front of him, whereupon Tate grabbed the carbine and forced it down between his knees. When Reed fired the carbine, Tate, still holding the carbine down, drew his own service revolver and fired it twice. He believed that he had struck Reed in the stomach but saw no signs of a wound. The other intruders also attempted to shoot Tate and from one he received shotgun wounds as he was retreating towards the rear of the bank to reload his revolver. The assailants then fled the bank, leaving beyind a trench coat, two 12-gauge shotgun shell casings and two .30 caliber shell casings.

Reed was from the St. Paul-Minneapolis area. On October 7, 1970 he had rented a house in Omaha at 4267 Wirt Street using the name "Duane Reed." Here he resided for several weeks in October, and it was at this residence that his cousin, Irma Reed, met Reed's codefendant Larry Clark, who was later identified as one of the three men who attempted the bank robbery, and who was also convicted thereof. Irma saw her cousin in Omaha within a day or two after the attempted robbery.

On September 30, 1970 an individual using the name "Duane Keith Reed" purchased in a suburb of Minneapolis a Plainfield .30 caliber rifle, model PM 30F, serial number 25082, commonly referred to as a carbine, and a Smith & Wesson .38 caliber revolver. The address the purchaser gave is that of Walter Reed, petitioner's father. The .30 caliber shell casings found at the bank would fit, it was testified, the Plainfield rifle. On November 2, 1970 a sawed off shotgun was found along an interstate highway near Minneapolis, contained in a box marked "Plainfield PM 30F Serial # 25082." This shotgun was identified by microscopic comparison of a test shell with one found in the bank, as the gun that had been used in the attempted robbery.

The trench coat found at the scene of the crime bore the label "Westchester Arms, Liemandt's, Minneapolis, St. Paul." It was established that the store had stocked only two coats of the same size, style, and material; and that one had been sold to "Ronald L. Reed" on September 8, 1970, and the other had been sold subsequent to the crime. Other testimony as to clothing was also introduced. The testimony of eye witnesses was that the intruders were wearing military clothing. The petitioner, it was shown, had been issued military clothing on September 28, 1970, by the storekeeper at the R.O.T.C. Armory at the University of Minnesota, and a plumber called to the house Reed had rented, 4267 Wirt, testified that while there on October 23, 1970 he observed combat boots in the house as well as a .38 caliber Smith & Wesson revolver.

The most damaging testimony against Reed was his positive identification by Sergeant Tate. Tate had struggled with Reed, and had had ample opportunity for close observation. There is no intimation that the light was faulty or vision obscured. His testimony is challenged on the ground that although he thought he had shot his assailant twice at close

**5.** Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

range, Reed was unharmed.[6] In fact, the man with the carbine was seen running out of the bank by witness Perry who stated he did not appear to be wounded.

The identification of Reed by Susan Snell, a loan clerk, conflicts with that of other witnesses present in the bank. Although she identified Reed as the man who, with two pistols, entered the back room where she was working, and who left when the shooting started, another witness identified this man as codefendant Clark and all witnesses agreed that only one man went into the room.

In this context we evaluate the impact of the driver's license evidence which placed Reed in Omaha on the date of the offense. We note that "The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo* but, rather, to review for violation of federal constitutional standards. In that process we do not close our eyes to the reality of overwhelming evidence of guilt fairly established in the state court * * * by use of evidence not challenged here * * *."[7]

We have examined the record with care and it is our conclusion therefrom "that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony * * * been excluded."[8] The totality of the evidence convinces us that the driver's license evidence might well have been omitted without altering the result reached by the jury. We do not make much of the asserted weaknesses in the identification of Reed. Rare is the case in which testimonial discrepancies do not appear and the more the participants, particularly with shoot-

ings and woundings, often the wider the discrepancies. It is at this point that the jury, listening and looking, appraising and deliberating, performs its constitutional function. The jury obviously gave credence to the eyewitness testimony, as corroborated by the substantial physical evidence which placed Reed at the scene of the crime. The driver's license evidence could have added but little to this determination, especially in view of the other evidence which established that Reed resided in Omaha during the period in question. Assuming, *arguendo*, that the receipt of such evidence was error, it was harmless beyond a reasonable doubt.[9]

Under the view we have taken of the case, we do not reach the search and seizure issues presented.[10]

Affirmed.

---

**6.** Blood on the floor of the bank might have been that of Tate, who had been shot, or of another. No identification of the source of the blood was established.

**7.** Milton v. Wainright, 407 U.S. 371, 377–78, 92 S.Ct. 2174, 2178, 33 L.Ed.2d 1 (1972).

**8.** Schneble v. Florida, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972).

**9.** Chapman v. California, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fahy v.

Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *see* Note, Harmless Constitutional Error: A Reappraisal, 83 Harv. L.Rev. 814 (1970).

**10.** The District Court held against Reed on such issues, characterizing them, in denying under 28 U.S.C. § 2253 his application for certificate of probable cause (later granted), as "wholly without merit" and an appeal therefrom as "frivolous."