**Lynnwell SMITH, Petitioner-Appellee,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellant.**

No. 74–1188.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1975.

John Pierce Griffin, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Phillip M. Renfro, Houston, Tex. (Court appointed), for petitioner-appellee.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

John R. BROWN, Chief Judge:

This is an appeal from a grant of a habeas writ to petitioner Smith, who was convicted of murder with malice in a Texas court. Smith contends that his conviction resulted from the admission into evidence of incriminating statements made by him to the interrogating police officers after his repeated requests for an attorney were denied. We agree with the State that the error in Smith's conviction was harmless beyond a reasonable doubt and reverse.

Hara Joseph Neveu was stabbed and killed on September 21, 1963 in a Saturday night fracas outside of Ford's Cafe, a dance hall in Harrison County, Texas. There were three witnesses to the murder: Frederick Hawkins, the victim's friend who accompanied him to the dance hall; Winford Green, a friend and companion of petitioner Lynnwell Smith; and petitioner Smith himself. The victim and all three witnesses had been drinking that evening.

At Smith's trial, Smith freely and voluntarily took the stand in his own defense after the prosecution and defense had both rested. According to Smith's testimony, he gave his knife to Green at Green's request when Neveu and Hawkins left the dance hall, and he and Green then followed Neveu and Hawkins to their car. Neveu got in the passenger side, and Smith and Green stood near the passenger-side door, asking Neveu what he was going to do about stepping on and scuffing up Green's shoes in the dance hall. Hawkins then attempted to back the car up, almost hitting Smith

with the open door. Green yelled at Hawkins, and Green and Smith walked around to the front of the car, at which point Hawkins drove the car forward, making Smith and Green jump out of the way. Hawkins then got out of the car and ran to the trunk. Green went back to the trunk and warned Hawkins not to open it, and at this point—all according to Smith's testimony—Neveu jumped out of the car and struck Smith, knocking him off guard. Green came over and grabbed Neveu, and then Hawkins came and pulled Green off Neveu. As Green was being pulled back, he passed the knife Smith had given him earlier back to Smith. Neveu then started to get up in disregard of Smith's warnings to stay put, and when Neveu continued getting up Smith "whacked at him" with his knife. Smith repeatedly admitted "whacking at," "cutting at," or "striking at" the victim with the knife but just as often denied knowing whether he actually cut the victim or not. Smith testified further that he then left Neveu to break up the fight between Hawkins and Green, and that when he returned he spotted blood on Neveu, got scared, and threw his knife away.

Green's testimony was considerably less detailed, but for the most part it corroborated Smith's account. Green, however, made no mention of a knife—either of borrowing Smith's knife at the dance hall, passing it back to Smith during the fight, or seeing one in Smith's hand—and said nothing about warning Hawkins not to open the trunk. Green testified that Neveu had been cut when Smith pulled him off of Hawkins, but he did not see Smith and Neveu fighting. Green also testified that Neveu was staggering drunk when he left the dance hall.

Hawkins also testified that Neveu was drunk—so drunk that he had to help Neveu to the car and put him in the front seat. Hawkins further testified that Green pulled the knife on him when Green prevented him from opening the trunk of the car. Hawkins claimed that both Smith and Green pulled Neveu

from the car, that he went to Neveu and pulled Green off of him, and that he then went back to pull Smith off. At this point he saw Smith making a chopping motion at Neveu with his hand. It was dark and Hawkins said he did not see a knife in Smith's hand.

After arresting Smith, police officers interrogated him until—some hours later—Smith signed a written confession in which he admitted stabbing and killing Neveu. Smith then volunteered to find his knife at the scene of the crime, and two officers drove him there. Smith made additional oral admissions of guilt at the scene of the crime. The police officers found the knife, though at a distance from where Smith showed them he threw it.

One of the two officers in the car was not available for the trial, but the other—Officer Rippey—testified about Smith's statements. Exactly which statements—oral or written—Officer

Rippey testified about is not clear from the trial transcript. The District Court found that he testified about the written statement, even though the officer testified that he did not talk to Smith at the jail. Tr. at 112. The officer testified that Smith admitted stabbing and killing Neveu.[1]

Green, who was also indicted for killing Neveu, testified that he too heard Smith admit stabbing and killing Neveu. At first Green testified that he heard Smith make this admission when taken back to the scene of the crime,[2] but he later testified that Smith made the admission at the jail.[3] It is not clear from the record whether Green was a bystander to the admissions which Smith now challenges—in which case Green's testimony would be highly suspect if not inadmissible—or whether Smith made these admissions to Green apart from his admissions to the police officers. In any

---

**1.** "Q. Mr. Rippey, prior to going down there did you have an occasion to have a conversation with the defendant Lynnwell Smith?
A. Yes, sir, we did.
Q. I will ask you whether or not Lynnwell Smith accompanied you to the scene?
A. He did.
Q. I will ask you if in that conversation Lynnwell Smith stated that he had stabbed and killed Hara Joseph Neveu?
A. He did."
Tr. at 29–30.
"Q. When you got out there where the cutting took place, Mr. Rippey, and after you found the knife, immediately upon finding the knife what did you do?
A. When I found the knife I called to Lynnwell here and to Mr. Weaver, who was across the road I believe at a house over there, and had them come see the location and the position of the knife.
Q. Did the defendant identify the knife as his?
A. He did.
Q. Did he admit that he had done this cutting?
A. He did."
Tr. at 116.

**2.** "Q. After this knife was found, what did Lynnwell Smith say with reference to whether or not he had cut the man or not?
A. He told them that was the knife.
Q. Told them that that was the knife, and what?

A. That he cut him."
Tr. at 52.
The record does not show the disposition of the indictment against Green.

**3.** "BY MR. ALLEN [prosecutor]:
Q. But you did hear Lynnwell Smith say that this was his knife and that he cut Hara Joseph Neveu with that knife that night, didn't you?
A. Yes, sir.
BY MR. SCOTT [defense counsel]:
Q. Where did you hear Lynnwell Smith say that?
A. In the Jailhouse.
 * * * * * *
Q. And Lynnwell made the statement in the Jail that this was his knife?
A. Yes, sir.
Q. Who was present when he made that statement?
A. His mother and two more policemen."
Tr. at 74–75.
"BY MR. ALLEN:
Q. You also heard Lynnwell Smith say that he was the one that cut him, didn't you?
A. Yes, sir, he said that.
MR. ALLEN: No further questions.
BY MR. SCOTT:
Q. Lynnwell told you that he cut him?
A. Yes, sir.
Q. When did he tell you that?
A. In the jailhouse."
Tr. at 133–34.

case, Green's testimony must stand, since Smith did not challenge his testimony at the trial and does not challenge it now on appeal.

Smith was tried and convicted in a jury trial, and he was sentenced to a term of 99 years on August 30, 1965. Smith did not appeal his conviction but subsequently applied for a writ of habeas corpus in Texas court. His application was denied, and the Texas Court of Criminal Appeals upheld the denial of the writ. Smith then filed his petition for habeas relief in Federal District Court, and it was granted on December 4, 1973 on the basis of *Escobedo v. Illinois,* 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. This appeal followed.

Smith contends that it was constitutional error to allow Officer Rippey to testify as to the admissions of guilt which Smith made in response to police interrogation. Although petitioner offered no evidence at his state trial of his request to see counsel, the District Court in granting the habeas writ found that during the time he was in custody being interrogated by the police officers, Smith repeatedly asked for the presence of his family's attorney, and these requests were denied. The District Court hearing took place eight years after petitioner's Texas court trial—ten years after the murder took place—and the State was unable to produce either of the police

officers who interrogated Smith following the murder.

 Smith's trial was held on August 10, 1965, after *Escobedo* was decided but before *Miranda v. Arizona,* 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thus, *Miranda* does not apply to this case, and *Escobedo* controls. *Johnson v. New Jersey,* 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Under *Escobedo,* if Smith asserted the right to consult counsel during his interrogation, the police were obliged to *cease*—not cease for a little while[4]—interrogation until he had enjoyed that right. Any statement obtained by police in violation of that obligation is inadmissible. Thus, the District Court correctly held that it was constitutional error to admit the police officer's testimony concerning Smith's incriminating statements.[5]

 The finding of constitutional error, however, does not require an automatic reversal without further discussion. Before constitutional error in Smith's trial can operate to void his conviction, there must be a reasonable possibility that the evidence complained of might have contributed to the conviction, *Chapman v. California,* 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Fahy v. Connecticut,* 1963, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, in that the average juror would have found the state's case

---

**4.** "We hold, therefore, that where * * * the police carry out a *process of interrogations* that lends itself to eliciting criminal statements, the suspect has requested and been denied an opportunity to consult with his lawyer, * * * no statement elicited by the police during the interrogation may be used against him at a criminal trial." *Escobedo v. Illinois,* 378 U.S. at 490, 84 S.Ct. at 1765, 12 L.Ed.2d at 986 (emphasis added). The State has not contended that Smith was adequately warned of his right to remain silent, a factor which the opinion in *Escobedo* suggested might rectify the denial of a request for counsel. *Id.* at 491–92, 84 S.Ct. 1758, 12 L.Ed.2d at 986.

**5.** Smith's trial counsel repeatedly objected to the admission of Smith's incriminating statements on the ground that the police had not complied with the procedural requirements of Texas law, Vernon's Ann.C.C.P. Art. 727 (recodified in 1965 as Vernon's Ann.C.C.P. Art. 38.-

22). The District Court found that these objections were not based on constitutional grounds. An examination of the record reveals, however, that Smith's counsel also relied on constitutional grounds in his motion to exclude the testimony of Officer Rippey in its entirety, which he made immediately after Officer Rippey concluded his testimony. Tr. at 118. Although counsel relied on the wrong case—he cited *Gideon v. Wainwright,* 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, and "a number of subsequent cases"—and his argument ultimately wandered back to the Texas procedural ground, Tr. at 120, the discussion generally reflected the rationale of *Escobedo* and it was clear that counsel was making a constitutional objection. Thus, we feel that counsel's objection was sufficient to preserve the question of Smith's *Escobedo* rights on appeal. *See United States v. Goodwin,* 1972, 5 Cir., 470 F.2d 893.

significantly less persuasive had the disputed testimony been excluded. *Schneble v. Florida*, 1972, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340; *Harrington v. California*, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. In this regard, we look to the record for independent evidence of guilt, including in court admissions by petitioner Smith himself. *Milton v. Wainwright*, 1972, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1; *Harrington v. California, supra*; *Adkins v. Beto*, 1972, 5 Cir., 462 F.2d 802.

There was no testimony that there was more than one knife—Smith's —at the scene of the fight, and only Smith and Green had the knife that evening. There was no testimony that it was Green who stabbed the victim, even though Green did have the knife when the altercation began. Smith himself testified that he whacked at Neveu with his knife.[6] If Neveu had been cut *before* Smith whacked at him, Neveu would not have been able to jump at Smith in the way Smith testified he did—the examining physician testified that any of the three horizontal cuts on the victim's chest and abdomen was sufficient to produce death. Also, no one—not even Smith who was close—noticed any blood on the victim prior to the time that Green passed the knife to Smith. Likewise, the victim could not have been stabbed *after* Smith whacked at him. Smith testified that after whacking at Neveu, he went over and broke up the fight between Green and Hawkins—still carrying his knife—and then returned to the now bloody victim, at which point Smith threw his knife away.

Under these circumstances, there is no significant difference between Smith's testimony that he "whacked at" the victim with his knife and Officer Rippey's testimony, which should have been excluded, that Smith admitted stabbing the victim. Smith is the only one who could have stabbed Neveu. Smith was essentially claiming self defense, a claim which the jury rejected. In addition, there was independent evidence—Green's testimony—that Smith admitted stabbing and killing the victim, a factor which lessens even further the impact of Officer Rippey's testimony.

In our view, the evidence which should have been excluded did not contribute to Smith's conviction, since the State's case would not have been significantly less persuasive had the defective testimony been excluded. We are highly aware of the threat to our cherished constitutional rights posed by the misapplication or creeping extension of the harmless error rule in any of its various mutations. We do not now nor do we intend to broaden the limited reach of this rule. Our review of the record, however, leaves us with no reasonable doubt that the tainted evidence did not contribute to petitioner's conviction and that the jury at petitioner's 1965 trial would have reached the same verdict without hearing the constitutionally defective testimony.

Reversed.

---

**6.** Under the "theory of principals" in Texas law, Smith would be guilty of murder even if he had only "actively participated" in the attack which resulted in the victim's death. *Walker v. State*, 1969, Tex.Cr.App., 440 S.W.2d 653. It appears that this was the theory under which Green was indicted. Thus, even if Green *had* stabbed the victim, Smith could have been tried for murder simply for "whacking at" the victim with his knife.