STATE OF NEBRASKA, APPELLEE, v. FRANK C. ANDERSEN, APPELLANT.

331 N.W.2d 507

Filed March 11, 1983.   No. 82-182.

Richard L. Kuhlman, for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and WARREN, D.J.

KRIVOSHA, C.J.

The appellant, Frank C. Andersen, was convicted by a jury in the county court of Dodge County, Nebraska, of operating or having actual physical control of a motor vehicle while under the influence of alcoholic liquor or while having ten-hundredths of one percent or more by weight of alcohol in his body fluid as shown by chemical analysis of his breath, contrary to the provisions of Neb. Rev. Stat. § 39-669.07 (Reissue 1978). By reason of this being Andersen's second offense, the trial court sentenced him to 90 days in jail and suspended his driver's license for a period of 1 year. Andersen appealed the conviction to the District Court for Dodge County, Nebraska, which affirmed the conviction and sentence previously entered by the county court. He then perfected his appeal to this court.

While his assignments of error are 12 in number, when regrouped they are essentially as follows: He first complains that the trial court erred in admitting into evidence, over Andersen's objection, Andersen's own statement to the police officer that he had been celebrating getting off of probation for driving while intoxicated. He further assigns as error the fact that the trial court permitted the

introduction into evidence of the results of certain portions of a breath analyzer test without first giving Andersen notice that such results would be offered in evidence. A third assignment of error concerns the giving of two instructions concerning driving while intoxicated. And, lastly, Andersen maintains that the evidence was insufficient to sustain the finding of guilt. Our examination of the record compels us to affirm.

The record reveals that at approximately 8:25 p.m. on March 15, 1981, a vehicle driven by Andersen was observed by a Fremont police officer, Priscilla Seyboth. At the time, the Andersen vehicle was going east on Linden Street at approximately 5 m.p.h. After stopping at an intersection the Andersen vehicle made a left turn onto Clarkson Street. Officer Seyboth then observed that the vehicle was being driven on the grassy area between the street and the sidewalk and that only the wheels on the driver's side of the vehicle were in the street. Andersen continued to drive the vehicle over the curb for approximately one-half of a block. There was no other traffic on Clarkson Street at that time.

After observing this behavior Officer Seyboth pulled up behind the Andersen vehicle and turned on the overhead flashing lights on her vehicle. Andersen gave no indication that he saw the police car behind him and, instead, moved into the left turn lane on Clarkson at its 16th Street intersection. He then made a left turn onto 16th Street, and Officer Seyboth began honking her horn to attract his attention. Andersen finally pulled over about half a block from the intersection.

As Officer Seyboth was approaching the Andersen vehicle, she observed Andersen attempt to get out of the vehicle and almost fall to the ground. She also noted a very strong odor of alcohol on Andersen. Andersen was unable to find his driver's license in his wallet after fumbling with it for several minutes. Andersen told Officer Seyboth that he had been

driving his vehicle up out of the street in order to avoid traffic.

Officer Seyboth then asked Andersen to perform four field sobriety tests. He was unable to perform the balance test without swaying or staggering, and was unable to complete the heel-to-toe test after three attempts. A test requiring him to pick up a key ring while standing on one leg was demonstrated by Officer Seyboth to Andersen. He was unable to stand on one leg and he completely missed the key ring. When asked to close his eyes and touch the tip of his nose with his index finger, he was unable to comply.

Officer Seyboth then took Andersen back to the police cruiser and asked him to sit in the front seat. After she read the preliminary test advisement to Andersen, he agreed to submit to an Alco-Sensor test. While the officer and Andersen were sitting in the cruiser, prior to Andersen taking the Alco-Sensor test, Officer Seyboth asked Andersen if he had been drinking. He responded that he had just been celebrating getting off of probation for driving while intoxicated. The State concedes that Andersen had not been given a *Miranda* warning by Officer Seyboth before the inquiry was made. After waiting a requisite 15 minutes, Officer Seyboth administered the Alco-Sensor test. The device registered "fail," and Officer Seyboth informed Andersen that he was under arrest.

Andersen was then taken to the Fremont police station by Officer Seyboth. Officer Lutes read an implied consent advisement form to Andersen, who agreed to submit to a gas chromatograph test. The purpose of the test is to determine the percentage of alcohol in the body fluid of an individual. The machine was prepared in accordance with the technique previously approved by the State of Nebraska, Department of Health, including a test to check the calibration of the machine, using a known standard. After explaining the test to Andersen the test was

administered and a digital reading of .261 was obtained. The officer switched the machine to "standby" and obtained a graphic readout. Andersen was then taken to the station's holding cell.

During the trial in the county court the result of the breath test conducted at the police station was admitted into evidence over Andersen's objection. Also admitted in evidence was the statement made by Andersen to Officer Seyboth concerning his reason for drinking that evening. In addition to the result of the breath test, there was likewise offered in evidence all of the additional testimony concerning Andersen's erratic driving and his inability to perform any of the field sobriety tests. There was also evidence to the effect that there was a very strong odor of alcohol present on Andersen, that his speech was slurred, that his eyes were bloodshot, and that he nearly fell to the ground getting out of his vehicle.

Officer Tamke, the officer in charge of maintenance and calibration for the Fremont Police Department, testified at the trial about the procedures used in calibrating the equipment used to conduct the test on Andersen. The equipment was an Intoximeter Mark IV gas chromatograph. Officer Tamke also testified concerning the NALCO standard solution used to test the accuracy of the machine. He stated, without contradiction, that the device was in good working order on March 15, 1981, when the test was administered to Andersen.

Andersen testified in his own defense at the trial. He claimed that his total alcohol intake on March 15, 1981, consisted of half a can of beer and a swallow of whiskey. He maintained that a prior injury to his legs was the reason for his inability to perform the field sobriety test. He further testified that the steering mechanism on his vehicle was damaged, thereby causing the erratic driving observed by Officer Seyboth.

We turn first to Andersen's claim that the result of the breath test administered at the police station

should not have been admitted in evidence because the State failed to satisfy certain foundational requirements as set out in our opinion in *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980). In the *Gerber* case we said at 90-91, 291 N.W.2d at 411-12: "[B]efore the State may offer in evidence the results of a breath test for the purpose of establishing that a defendant was at a particular time operating a motor vehicle while having ten-hundredths of one percent or more by weight of alcohol in his body fluid, the State must prove the following: (1) That the testing device or equipment was in proper working order at the time of conducting the test; (2) That the person giving and interpreting the test was properly qualified and held a valid permit issued by the Nebraska Department of Health at the time of conducting the test; (3) That the test was properly conducted in accordance with a method currently approved by the Nebraska Department of Health; and (4) That there was compliance with any statutory requirements."

Though Andersen argues that the State failed to establish the second, third, and fourth requirements of the *Gerber* test, the record clearly establishes the contrary. Andersen's assertion that Officer Seyboth lacked sufficient knowledge of alcohol chemistry or test variables to accurately perform a breath test by using the Mark IV equipment is simply without merit. The State produced evidence that Seyboth was properly qualified and on March 15, 1981, held a valid permit issued by the Department of Health. She testified that she had passed both written and practical examinations in order to obtain the permit. Neither the Department of Health nor the law in the State of Nebraska requires that persons administering such tests must be graduate chemists; they merely must have "some knowledge of the chemistry of alcohol and of other substances of proper concern." This knowledge is shown by the individual successfully completing a written examina-

tion given by the Department of Health. The evidence establishes that Officer Seyboth satisfied the requirements of the Department of Health and properly obtained a permit authorizing her to administer the test.

Andersen next asserts that the test was not properly conducted in accordance with a method currently approved by the Department of Health. The testimony of both Officer Seyboth and Officer Tamke is clearly to the contrary. Both officers testified in detail as to the procedures followed in administering the test and in calibrating the machine. The checklist used by Officer Seyboth to document the steps is one approved and prescribed by the rules of the Department of Health of the State of Nebraska. Andersen does not tell us how the State failed to comply with the fourth requirement of the *Gerber* test, and the evidence proves otherwise. The assignment of error is simply without merit and the trial court properly admitted the result of the Intoximeter test into evidence.

Andersen's claim concerning the admissibility of his statement to Officer Seyboth concerning the reason for his drinking that evening presents a more difficult problem, though not for any reason raised by Andersen. After failing the field sobriety tests Andersen was taken by Officer Seyboth to the police cruiser for a preliminary breath test. The evidence seems fairly clear that Andersen was not free at that point to leave and therefore was in custody. Without advising Andersen of his constitutional rights Officer Seyboth interrogated him concerning whether he had been drinking. This procedure would appear to be directly contrary to the requirements set out in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and reaffirmed by our own decisions, including our recent decision in *State v. Thunder Hawk,* 212 Neb. 350, 322 N.W.2d 669 (1982). In *Miranda* the U.S. Supreme Court said at 444: "[T]he prosecution may not use statements, whether

exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." It seems clear from the evidence that at the time Officer Seyboth made inquiry of Andersen, Andersen was then, if not in custody, certainly otherwise deprived of his freedom of action in a significant way. The State's contention that the question was merely a part of an "on-the-scene investigation," not requiring the officer to advise Andersen of his rights, is simply erroneous.

Our finding, however, that a *Miranda* violation has occurred does not resolve the question, for it is well established that the admission of statements obtained in violation of *Miranda* may nevertheless be considered harmless error not requiring reversal of an otherwise valid conviction. See, *Harryman v. Estelle,* 616 F.2d 870 (5th Cir. 1980); *United States v. Cheung Kin Ping,* 555 F.2d 1069 (2d Cir. 1977); *Smith v. Estelle,* 519 F.2d 1267 (5th Cir. 1975); *Reed v. Wolff,* 511 F.2d 1369 (8th Cir. 1975); *Palmer v. State,* 604 P.2d 1106 (Alaska 1979).

As the cases cited illustrate, a finding of constitutional error in a case of this nature does not require an automatic reversal unless there appears from the evidence a reasonable possibility that the evidence complained of might have contributed to the conviction. See, *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963). For the error to be prejudicial and require reversal, we must find that the jury would have found the State's case significantly less persuasive had the disputed testimony been excluded. *Schneble v. Florida,* 405 U.S. 427, 92 S. Ct.

1056, 31 L. Ed. 2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969). In this regard, the court must look to the record for independent evidence of guilt. *Milton v. Wainwright,* 407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972). The court must then decide whether the error was harmless beyond a reasonable doubt. See *Chapman v. California, supra.*

In the instant case the State adduced testimony, absent Andersen's own statement, which established guilt beyond a reasonable doubt. When one considers the evidence concerning Andersen's manner of driving, his physical appearance and behavior, and the result of the Intoximeter test, no other result could have reasonably been reached but that of guilty. To say that the evidence against Andersen was overwhelming is to understate the State's case. Andersen's admission to Officer Seyboth as to the reason why he was in the condition he was in at the time of his arrest was, at most, cumulative, and a review of the record leaves no reasonable doubt that the jury would have reached the same verdict without the testimony concerning Andersen's statement.

The Alaska Supreme Court was presented a similar question in *Palmer v. State, supra.* After stopping the defendant's car the arresting officer, before formally placing him under arrest, asked him how much he had drunk. The defendant replied that he had had five or six beers. This exchange occurred before the driver was advised of his right to remain silent. In affirming the conviction, the Alaska court stated at 1111: "Assuming, *arguendo,* that there was a *Miranda* violation, we conclude that the statement, if it was incriminating, merely corroborated other evidence at trial which, standing alone, would have been more than sufficient to convict Palmer of the offense charged. If it was error to admit the statement, such error was harmless beyond a reasonable doubt, since we see no reasonable

possibility that the evidence contributed to the jury's verdict.''

Based upon the evidence in this case we must therefore find that while a violation of Andersen's rights occurred, it was without prejudice and thereby does not entitle him to a reversal.

Andersen further contends that error was committed because the court permitted the introduction into evidence of the tests used in calibrating the gas chromatograph without first notifying the defendant that such tests would be offered in evidence. Andersen argues that exhibit 9, which was a standard alcohol solution certification sent to the Fremont Police Department by the Nebraska Department of Health along with the solution used by the Fremont Police Department in calibrating the gas chromatograph, and exhibit 10, which was the record made by Officer Tamke when he ran the 10 tests on the NALCO to determine its target value, constitute one of the exceptions to the hearsay rule, see Neb. Rev. Stat. § 27-803(7) (Reissue 1979), and requires the giving of reasonable notice to the opposing party before the evidence may be offered at trial. In this regard, Andersen is simply in error. Exhibits 9 and 10 were among a number of documents submitted by the State in laying foundation for the introduction of the result of the gas chromatograph test on Andersen and were submitted in conjunction with detailed testimony by Tamke as to the procedures he followed in maintaining and calibrating the gas chromatograph as a regular part of his duties. They were not offered as an exception to the hearsay rule. Tamke was present and subject to cross-examination. Under the provisions of Neb. Rev. Stat. § 27-801(3) (Reissue 1979), hearsay is defined as ''a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'' Exhibits 9 and 10 were not documents included within the definition of § 27-803(7), and notice was not required to

be given by the State to Andersen. For that reason, permitting the exhibits to be introduced in evidence in support of the witness' testimony was not error.

Andersen further assigns as error several of the jury instructions given by the trial court. He alleges that by giving two separate instructions defining "under the influence of alcoholic liquor," the trial court confused and misled the jury. There is simply no basis for that claim. We have previously stated that the repetition of an instruction is not reversible error unless its effect is to mislead the jury. *State v. Suggett,* 189 Neb. 714, 204 N.W.2d 793 (1973). Here, the instructions were correct statements of the applicable law and could in no way mislead the jury. Likewise, instruction No. 11, concerning credibility of the witnesses, is a direct statement from NJI 14.81, ¶¶ 1-7, 10-11. We find no error in the giving of this instruction.

Our review of the record satisfies us that there was no prejudicial error committed in connection with the trial in the county court, and the verdict of the jury is amply sustained by the evidence. The judgment of the District Court affirming the action of the county court is affirmed.

AFFIRMED.