FIRST WEST SIDE BANK, A BANKING CORPORATION, APPELLANT, V. CHARLES S. HIDDLESTON AND JOYCE HIDDLESTON, APPELLEES.

407 N.W.2d 170

Filed June 12, 1987.    No. 85-593.

Ronald L. Eggers of Thompson, Crounse, Pieper & Quinn, for appellant.

Gerald P. Laughlin of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an action by the plaintiff bank to enforce a personal guaranty agreement executed by the defendants in connection with credit extended to a business. The jury returned a verdict for the defendants, and the bank has appealed.

On appeal the plaintiff assigns the following errors: that the court erred in giving certain instructions to the jury, which instructions included statements contrary to law; that the court erred in failing to give certain instructions to the jury that were requested by the plaintiff, which instructions accurately reflected applicable law; and that the court erred in entering judgment in favor of the defendants, which judgment is contrary to law. We affirm.

The defendants, Charles S. and Joyce Hiddleston, signed a personal guaranty in April 1979, guaranteeing 24$^{1/2}$ percent of the outstanding debt of the E.E. Kelley & Co., Inc. (Kelley Co.), doing business as Virgie's Town & Country clothing stores. Joyce Hiddleston owned 24$^{1/2}$ percent of the stock of the Kelley Co. The plaintiff extended a $100,000 line of credit to the company, secured by the company's assets, with each of the shareholders guaranteeing a proportion of the indebtedness according to his or her percentage ownership of the stock.

The portions of the guaranty pertinent to the issues in this litigation, paragraphs 4 and 6, are set out in part as follows:

> I hereby waive notice of the acceptance of this Guaranty and of the giving of credit from time to time; and consent to any number of extensions or renewals of any note, indebtedness or liability for any periods without notice to me, and waive notice of nonpayment of the same and any renewals thereof.
>
> . . . .

This Guaranty shall continue indefinitely and nothing shall affect my liability except receipt by the Bank of written notice from me of the discontinuance thereof, or notice of my death, but termination shall not affect then existing obligations, and in the event of my death, my obligations shall continue in full force and effect against my estate; and my liability in respect thereto shall continue although such notes, indebtedness or liability may, from time to time, be extended or renewed.

In 1981 business at the stores began to decline. In early 1982 the shareholders apparently began to disagree as to the future direction that the business should take, with the defendants wanting to slow down its operations or close some of the stores. In March or April of 1982 the defendants contacted an employee of the plaintiff bank, expressing their concerns about the company and indicating that they wanted to discontinue their guaranty. On May 7, 1982, the defendants delivered a notice of discontinuance to the plaintiff. The defendants then received a letter from the plaintiff's attorney, stating that the bank rejected the alleged notice of discontinuance of guaranty and considered the guaranty as remaining in full force and effect.

There was credible evidence in the record to support the conclusion that as of May 7, 1982, there were assets of Kelley Co. which, if liquidated, would have been sufficient to more than cover the indebtedness to the plaintiff. In April of 1983 the company began a liquidation sale, and in January of 1984, the guarantors other than the defendants paid on their guaranties. The plaintiff then filed suit to recover on the defendants' guaranty.

The principal issue upon which this case was tried was whether defendants' notice of discontinuance of their guaranty was sufficient to discharge them of liability as to extensions or renewals of prenotice debts. In other words, did the language of paragraph 6 following the semicolon, "and my liability in respect thereto shall continue although such notes . . . be extended or renewed," apply to termination of liability by notice of discontinuance or only by notice of death?

The bank argues on appeal that the interpretation of a

contract of guaranty is a question of law for the court and that obviously the continuation of liability upon extension applies whether the guaranty is terminated by notice of discontinuance or of death. It cites in support of that contention *Corn Exchange Bank Trust Co. v. Gifford*, 268 N.Y. 153, 197 N.E. 178 (1935). Defendants take the opposite position, i.e., that the continuation of liability upon extension does not apply to termination due to notice of discontinuance, and cite in support of their position *Federal Deposit Ins. Corp. v. Manion*, 712 F.2d 295 (7th Cir. 1983).

However, it is not necessary for us to make this interpretation. That question was decided by the jury at the request of the plaintiff. At the close of plaintiff's case the defendants moved to dismiss plaintiff's petition or, in the alternative, to direct a verdict for the defendants, because, as a matter of law, the guaranty agreement could not be construed as granting to the plaintiff permission to make extensions and renewals after receiving a notice of discontinuance. In opposition to that motion plaintiff's counsel argued to the court "basically that all of the matters raised by [defendants' counsel] are all factual matters that are for the jury's consideration. . . . All these matters, the matter of whether or not there was consent to extensions or renewals, are all matters for the jury's consideration." Where a case is tried on a particular theory, the Supreme Court will dispose of the case on appeal on that theory. *Hammond v. Streeter, ante* p. 491, 406 N.W.2d 633 (1987).

A further indication of plaintiff's theory on trial was its requested instructions Nos. 12, 16, and 18. These instructions recite that *if* renewals and extensions were contemplated by the parties, then a notice of discontinuance does not extinguish the liability for such renewals or extensions. The substance of these requested instructions was embodied within the court's instruction No. 13, which in effect told the jury that if note renewals and extensions were contemplated within the guaranty contract, a notice of discontinuance would not extinguish the guarantors' liability on that account, and that the burden was on the plaintiff to prove the intention of the parties in that regard. If this was error on the part of the trial court, it was not

only condoned but invited by the words and actions of the plaintiff. A party cannot be heard to complain of error which such party was instrumental in bringing about. *Fuel Exploration, Inc. v. Novotny*, 221 Neb. 17, 374 N.W.2d 838 (1985).

Next, the plaintiff now objects to instructions Nos. 13, 17, 22, 23, 24, 25, and 26 given by the court. Instruction No. 13 has been discussed previously, and from that discussion it is obvious that we do not agree that such instruction constituted prejudicial error. The same reasoning applies to instruction No. 23, which was essentially an embodiment of plaintiff's requested instruction No. 13.

Instruction No. 17 permitted the jury to determine whether the guaranty was continuing in nature; instruction No. 22 permitted a verdict for the defendants if the jury found that defendants gave notice of discontinuance and that the plaintiff thereafter extended or renewed the existing indebtedness without defendants' consent. The issue as to consent contained in that last instruction was inextricably tied to the previously discussed instructions relating to the intent of the parties. Jury instructions are to be read as a whole, and when they fairly submit the case and do not mislead the jury, there is no prejudicial error. *Hennis v. O'Connor*, 223 Neb. 112, 388 N.W.2d 470 (1986).

Instruction No. 24 related to the execution of new loans after the notice of discontinuance. No such finding was made by the jury. Also, this instruction tracked the argument to the trial court made by plaintiff's counsel that "the factual questions that exist, I think the Court's well aware of the questions on the factual segment of this, disputes as to matter of new loans versus existing loans . . . ."

The final two criticized instructions, Nos. 25 and 26, related to defendants' defense of good faith and fair dealing. It is plaintiff's position that there was no evidence of a lack of good faith or fair dealing. There was evidence, as pointed out by defendants, that the bank informed defendants that they could not discontinue the guaranty, and the bank specifically rejected in writing the written notice of discontinuance and thereafter, by refusing to cause a liquidation of the debtor's assets at a time

when the debt could have been paid in full, thereby permitted "gambling" with defendants' money. We see no merit to plaintiff's argument.

Plaintiff also contends that the court erred in refusing to give its requested instructions Nos. 5, 12, 13, 14, 16, and 18. The substance of all of these instructions was embodied in those given by the court on its own motion, some of which the plaintiff now insists were erroneous. It is not error for the trial court to refuse a request for additional instructions where it has, on its own motion, fairly and fully instructed the jury on a party's theory of the case. *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985).

Perhaps an even more compelling reason to reject plaintiff's claim of error regarding instructions is counsel's actions at the instruction conference. Upon inquiry by the court, counsel replied, "I do not have any objection to the proposed instructions." Later on, he was asked if he had any requested instructions. To that question he answered: "I also had prepared and filed earlier requested instructions, but in light of our — in reviewing instructions earlier today, I don't have any objection to the instructions that the Court is giving."

"[I]t is the duty of the trial court, without any request to do so, to instruct the jury on the issues presented by the pleadings and supported by the evidence. [Citations omitted.]

"In applying that principle we have established that the failure to object to instructions after they have been submitted to counsel for review or to offer more specific instructions if counsel feels the court-tendered instructions are not sufficiently specific will preclude raising an objection on appeal, unless there is a plain error indicative of a probable miscarriage of justice."

*Ellis & Guy Advg. v. Cohen*, 219 Neb. 340, 342-43, 363 N.W.2d 180, 182 (1985), quoting *McCauley v. Briggs*, 218 Neb. 403, 355 N.W.2d 508 (1984).

It should be quite apparent from our earlier discussion that we find no plain error indicative of a miscarriage of justice regarding the giving or refusing to give instructions.

The plaintiff's final assignment of error is that the judgment

rendered by the trial court was contrary to law. We have previously disposed of plaintiff's argument in this regard because its theory at trial was that the interpretation of the particular segment of the guaranty contract at issue was a question of fact for the jury. There was evidence to support the jury's conclusion. The verdict of a jury based on conflicting evidence will not and should not be set aside unless it is clearly wrong. *Bourke v. Watts*, 223 Neb. 511, 391 N.W.2d 552 (1986).

The judgment of the district court is affirmed.

AFFIRMED.

CAPORALE, J., not participating.