STATE OF NEBRASKA, APPELLEE, V. ARTHUR W. LENZ, JR., APPELLANT.
419 N.W.2d 670

Filed February 26, 1988.    No. 87-246.

Robert C. Wester, Deputy Sarpy County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for appellee.

BOSLAUGH, CAPORALE, and SHANAHAN, JJ., and ROWLANDS, D.J., and COLWELL, D.J., Retired.

PER CURIAM.

Defendant, Arthur W. Lenz, appeals his jury convictions of robbery, Neb. Rev. Stat. § 28-324 (Reissue 1985), and using firearms to commit a felony, Neb. Rev. Stat. § 28-1205 (Reissue 1985). Lenz was sentenced to 1 to 3 years' confinement for robbery and a consecutive term of 1 year for using firearms to commit a felony. We reverse and remand for a new trial.

Lenz assigns two errors: (1) The court erred in failing to properly instruct the jury concerning the essential elements of the crime of using firearms to commit a felony; and (2) the court abused its discretion and committed error in permitting inadmissible evidence into the record.

The facts are as follows: Lenz lived in a house in Omaha with three other people: his girlfriend, Laurie Milton; Mark Clifford Gosch; and Suzanne Marie Johnson. As a group, they could not pay their utilities. Lenz and Gosch planned to rob Domino's Pizza store, Chandler Road, Sarpy County, Nebraska, where Lenz was once employed. On July 6, 1986, about 2 a.m., Lenz and Gosch changed into dark clothing, obtained a knife and a BB gun, picked up a ski mask and a monster-type mask from the house, and, together with Milton, drove to a house about two blocks from Domino's. Milton stayed in the car. Lenz and Gosch walked to Domino's, where they waited near the rear of the building for someone to emerge with the trash, as Lenz knew was the custom. After about 20 minutes, Sean Kelly exited with the trash, and, when he was returning, Lenz stepped in front of Kelly. Lenz warned Kelly, "You fly, you die." Lenz and Gosch followed Kelly back into Domino's. Lenz was wearing the monster mask, exhibit 1, and brandishing a gun

covered with a clear yellow bag; Gosch was wearing a ski mask, and he carried the knife, exhibit 3. Another employee, Marjorie Gutridge, was mopping the floor, and employee David Gochenour was in a side room counting the daily receipts. Lenz forced Kelly and Gutridge into a nearby room. Lenz demanded the money from Gochenour while aiming the gun at him. Gochenour put the money, about $550, in a bag, later recovered and designated as exhibit 4. Upon leaving the building, Lenz warned, "First one out the door gets killed." Lenz and Gosch returned to their car and, with Milton, drove back to their house, where the money was divided. Following a police investigation, an executed search warrant at the Lenz home produced the knife, BB gun, and monster mask. Lenz and Gosch were arrested. Gosch testified at the trial as a State's witness. Although the gun is described in the evidence as a BB gun, it was a pellet gun using compressed gas for power. It was not a toy. In appearance it resembled a revolver, including frame, stock, sights, hammer, and the barrel. It was not armed with a gas propellant at the time of the robbery. Because the gun was covered by a bag during the robbery, witnesses Gochenour and Gutridge could not give a clear description of the gun; however, Gosch testified that the gun was used by Lenz during the robbery and that Gosch carried the knife, which was described as a Buck knife or blade knife.

## ASSIGNED ERROR NO. 1: INSTRUCTIONS

Defendant did not object to any of the proposed instructions prior to their submission to the jury.

> While it is the duty of the trial court, without any request to do so, to instruct the jury on issues raised by the pleadings and supported by the evidence, failure of counsel to object to the giving of certain instructions after they have been submitted to counsel for review will preclude raising an objection to the instructions on appeal, unless there is plain error indicative of a probable miscarriage of justice.

(Syllabus of the court.) *First West Side Bank v. Hiddleston*, 225 Neb. 563, 407 N.W.2d 170 (1987).

"[A] party who desires more precise jury instructions must request them at the time the instructions are being considered

and not on appeal." *State v. Buchanan*, 210 Neb. 20, 24, 312 N.W.2d 684, 687 (1981).

The claimed instruction error relates to Neb. Rev. Stat. § 28-1205(1) (Reissue 1985): "Any person who uses a firearm, knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state . . . commits the offense of using firearms to commit a felony." This statute was properly summarized in instruction No. 6.

Instruction No. 7 advised the jury concerning the material elements of the crime of using firearms to commit a felony, alleged in the information, which the State was required to prove beyond a reasonable doubt:

(1) The defendant committed, or aided and abetted the commission of, a felony which may be prosecuted in a court of this state;

(2) A *deadly weapon* was used to commit such felony;

(3) The act took place on or about July 6, 1986; and

(4) The act took place in Sarpy County, Nebraska.

(Emphasis supplied.)

Instruction No. 8 recited a "deadly weapon" shall mean "any device or instrument which in the manner it is used or intended to be used is capable of producing death or serious bodily injury." This definition appears in Neb. Rev. Stat. § 28-109(7) (Reissue 1985).

Instruction No. 6 instructed the jury on the issue of aiders and abettors.

Defendant's argument is based on the rule announced in *State v. Williams*, 218 Neb. 57, 352 N.W.2d 576 (1984), that neither a BB gun (pellet gun) nor a knife is a dangerous weapon per se and that the jury should be so instructed. *Williams* is distinguishable in that the crime there charged was carrying a concealed weapon, Neb. Rev. Stat. § 28-1202(1) (Reissue 1979), which has different elements. That statute provides for certain affirmative defenses, and the reasoning in *Williams* does not apply here. Considering the instructions given here, a "per se" instruction was not required; further, defendant did not request such an instruction.

From a reading of the instructions as a whole, they are not

misleading, they correctly state the law, they properly instruct the jury on the material elements of the crime charged, and there was no prejudicial error. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984).

## ASSIGNED ERROR NO. 2: EVIDENCE

Generally, it is the rule that it is within the court's discretion to admit or exclude evidence, and such rulings on the evidence will be upheld upon appeal absent an abuse of discretion. *State v. Wilson*, 225 Neb. 466, 406 N.W.2d 123 (1987).

Lenz first challenges as hearsay, Neb. Rev. Stat. § 27-802 (Reissue 1985), the following testimony (identified by numbers for discussion purposes) of Officer Michael W. Laufenberg, Bellevue Police Department:

[1]Q. Okay, did either of the — Well, did any of the parties, Sean Kelly, Marge Gutridge, or David Gochenour, tell you if any weapons had been used in the robbery?

MR. GARVEY: Objection, calls for hearsay.

THE COURT: Overruled.

[2]Q. (By Mr. Irwin) Did any of them tell you if a weapon was used?

A. Yes.

[3]Q. Which one told you weapons were used?

A. All three of them.

[4]Q. And did you learn what kind of weapons?

A. One described as a four-inch nickel, possibly .38 caliber handgun.

MR. GARVEY: Your Honor, I'd like the record to reflect a continuing objection.

THE COURT: Overruled.

[5]Q. (By Mr. Irwin) And who gave you that description?

A. Kelly, I'm not sure of his first name.

[6]Q. Okay, Mr. Kelly, though?

A. Yes.

Questions Nos. 1 and 2 call for the same answer. They were not hearsay, since they were not offered to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801(3) (Reissue 1985); *Gray v. Maxwell*, 206 Neb. 385, 293 N.W.2d 90 (1980). Gutridge and Gochenour testified at the trial that weapons were

used and displayed by Lenz and Gosch during the robbery. Kelly did not testify; there is some suggestion that he was in the Armed Forces and not available as a witness.

The form of question No. 3 was leading, and it also called for hearsay. There was no objection to this question and no motion to strike the answer. At this point there was no prejudice resulting from admission of this hearsay, even if the prior objection was considered as continuing, since the evidence was cumulative, being supported by other evidence. *State v. Thierstein*, 220 Neb. 766, 371 N.W.2d 746 (1985); *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986).

Question No. 4 is another matter. It called for hearsay, and the unresponsive answer introduced for the first and only time evidence describing the gun as a .38-caliber handgun. This evidence was attributed to Kelly, who was not called as a witness. Questions Nos. 5 and 6 and their answers were further combinations of question No. 4. Other evidence in the record from several witnesses, including Gosch, clearly establishes that the BB gun (pellet gun) recovered from the Lenz home and made a part of the evidence as exhibit 2 was the gun used by Lenz during the robbery. That evidence was so overriding that there was neither an abuse of the court's discretion nor prejudice to defendant for admitting the answers to questions Nos. 4, 5, and 6.

Lastly, defendant objects to a part of the testimony of witness Mark Russell Weiss that at some unspecified time within the last 2 years he observed some people fighting near 13th and L Streets in Omaha, Nebraska, and he later learned that Lenz was a participant. He also testified that Lenz told him about another fight that Lenz had had. The State suggests that such evidence was properly admitted, as permitted in Neb. Rev. Stat. § 27-404(2) (Reissue 1985), to show that Lenz had the intent to perform violent acts during the robbery. There is no merit to that contention. The evidence concerning Lenz's fighting was an attempt to show character, contrary to § 27-404(1). It was error to receive it in evidence. The question, therefore, is whether the error was prejudicial. Neb. Rev. Stat. § 27-103 (Reissue 1985).

In *Fahy v. Connecticut*, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed.

2d 171 (1963), the state trial court admitted evidence obtained as the result of an unconstitutional search and seizure. The U.S. Supreme Court concluded that as there was "a reasonable possibility that the evidence complained of might have contributed to the conviction," the error was prejudicial and therefore not harmless. 375 U.S. at 86-87. In *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the U.S. Supreme Court observed that there may be some constitutional errors which, in the setting of a particular case, are so unimportant and insignificant that they may, consistent with the federal Constitution, be deemed harmless. Noting that there was "little, if any, difference" between the *Fahy* test for determining whether a constitutional error was nonprejudicial and the test announced in *Chapman*, the *Chapman* Court nonetheless declared that the test is whether the court is able to declare that the error was "harmless beyond a reasonable doubt." 386 U.S. at 24. The *Chapman* doctrine was applied in *United States v. Hastings*, 461 U.S. 499, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983), in which a majority of the Court concluded that in view of the overwhelming evidence of their guilt, the error in the prosecutor's reference to defendants' failure to testify was harmless beyond a reasonable doubt. The Court observed that the proper federal remedy for a violation of the rules of evidence is to discipline the offending lawyer, not reverse the case. (In this latter connection, see *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986).)

We have said that an evidential error of constitutional magnitude is harmless unless the State's case would have been significantly less persuasive had the disputed evidence been excluded, *State v. Whitmore*, 221 Neb. 450, 378 N.W.2d 150 (1985), and *State v. Andersen*, 213 Neb. 695, 331 N.W.2d 507 (1983), or when no substantial miscarriage of justice has actually occurred, *State v. Massey*, 218 Neb. 492, 357 N.W.2d 181 (1984). We have suggested that the test for determining whether an evidential error of less than constitutional magnitude is harmless is whether it is so beyond a reasonable doubt, *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983), or the defendant is not prejudiced from having a fair trial, *State v. Broomhall*, 221 Neb. 27, 374 N.W.2d 845 (1985), or it has not

affected a substantial right, *State v. Plymate*, 216 Neb. 722, 345 N.W.2d 327 (1984).

Whether these various tests actually articulate different standards, we, to avoid confusion, now hold that an error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt.

We cannot so say in this case, for we cannot determine how the jury would have evaluated the remaining evidence had it not, in effect, been told that defendant was of bad character in general and deserved punishment for something. See *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987).

Since the judgment of conviction must be reversed because of an erroneous evidential ruling rather than because the remaining evidence, if believed by the trier of fact, would nonetheless not support the convictions, jeopardy has not attached, and we therefore remand the cause for a new trial. *State v. Lee, ante* p. 277, 417 N.W.2d 26 (1987).

REVERSED AND REMANDED
FOR A NEW TRIAL.

COLWELL, D.J., Retired, dissenting.

I respectfully dissent for reasons hereafter discussed. The "fighting" evidence was included in the testimony of the State's eighth witness, Mark Russell Weiss:

Q. Okay. How long have you known A.J. Lenz?

A. Probably about two years.

Q. And have you ever known him to be in any kind of fights or assaults?

A. I had come back with a friend of mine by — across from Iowa, we were coming to Nebraska, by the 13th and L Street. There's a Kwik Shop located at that intersection.

Q. Okay. The L Street bridge there?

A. And a friend of mine that I had worked with at Longnecker's, I had driven by it and I saw a fight taking place, I didn't know who it was at the time.

Q. Let me stop you there. You say the fight taking place. Did you ever find out later who was involved in the fight?

A. Yes.

Q. And you learned that A. J. Lenz was one of the people involved?

A. Yes.

MR. GARVEY: Objection, hearsay, foundation, relevance.

THE COURT: Overruled.

Q. (By Mr. Irwin) And did you ever hear what had started the fight?

A. An argument about a car. Somebody said that A. J.'s car was a piece of junk, and he got very upset and he proceeded to act violently towards this —

Q. That night?

A. Yeah.

Q. Got out of the car, they had a fight?

A. Yeah.

Q. Did A. J. Lenz ever tell you about any other fights he had been in besides — other than that fight?

A. He had indicated where he was at a party, he was walking out to a car, his car, and somebody wanted to pick a fight with him at this party, and he was walking out to his car. And his — some girl was standing on top of the car or in a position where she could kick him, and hit him in the head. And she had kicked him in the head, and he fell down and he got up and he got into a fight then, too.

Q. With just the woman or with anyone else?

MR. GARVEY: I'd object again, Your Honor, I fail to see the relevance.

THE COURT: Sustained on [relevancy].

MR. IRWIN: Your Honor, could we approach the bench?

THE COURT: Mm-hmm.

(Discussion held in low tones at the bench, off the record.)

(The following proceedings were had in normal tones.)

MR. IRWIN: No other questions of this witness, Your Honor.

First of all, apparently defendant's counsel was not concerned about this line of testimony, since the second

question clearly put counsel on notice about the nature of the subject to be later pursued, and counsel did not object until four questions were asked and answered. After defendant's objection was overruled, four more questions and answers were elicited before counsel's objection was sustained, and then there was neither a motion to strike nor to admonish the jury to disregard the evidence.

> A litigant may not speculate about the answer to a question and then, after answer has been given, for the first time lodge his objection. . . . If a party does not make a timely objection to evidence, the party waives the right on appeal to assert prejudicial error. . . .

> In order to be timely an objection must ordinarily be made at the earliest opportunity after the ground for the objection becomes apparent.

*State v. Archbold,* 217 Neb. 345, 352, 350 N.W.2d 500, 505 (1984).

Neb. Rev. Stat. § 27-103(1) (Reissue 1985) provides that

> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

> (a) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if a specific ground was not apparent from the context . . . .

Under the state of the record here, defendant's failure to make a timely objection to the "fighting" questions and answers was a waiver of his right to later raise that issue in this appeal.

Secondly, there is an overwhelming connecting thread of evidence, including circumstantial evidence, proving defendant's guilt beyond a reasonable doubt and establishing that the "fighting" evidence was harmless error beyond a reasonable doubt. Parts of that evidence are summarized: Mark Clifford Gosch, the State's 10th witness, testified concerning all of the details of the robbery, including his part in the planning, travel to the robbery scene, the robbery details, division of the money, identifying the gun, knife, and mask as being items connected with the robbery, and his participation in

the robbery and the part played by Lenz. Jeffords Byington testified that in April or May of 1986 he became acquainted with Lenz, a neighbor. Lenz told him that he planned to rob Domino's Pizza and asked Byington to help him, which Byington declined to do. After the robbery, Byington was helping Lenz move a waterbed from the basement of his residence to an upper floor when Lenz said that "him and Mark had ripped off Domino's." Byington, being a State police informant, furnished this information to the local police. A search of Lenz's residence produced the BB gun, knife, and monster mask, all a part of the evidence. The knife had a blade $3\,^3/_{16}$ inches long. Laurie Milton, 18 years of age, a codefendant in the trial, testified on her own behalf that she did not participate in the robbery; however, shortly before the robbery she, Lenz, and Gosch left the Lenz residence in the Lenz car. Lenz and Gosch told her that they were going to south Omaha to beat up somebody. At that time Lenz and Gosch took with them the BB gun, knife, and monster mask, which she identified in the evidence. She said that she got into an argument with Lenz about going to south Omaha so they left her off at her mother's house. The only defense witness for Lenz was Gosch, who was called to describe the gun as being a BB gun, inoperable, since it did not have the required carbon dioxide propellant cartridge. Gosch also testified that the gun belonged to Lenz, who used it in the robbery.

This evidence was very strong and practically conclusive, establishing defendant's guilt beyond a reasonable doubt. See *State v. Franklin*, 194 Neb. 630, 234 N.W.2d 610 (1975). When the "fighting" evidence is considered with all of the other evidence, it is insignificant as an evidentiary factor relating to defendant's guilt. See *State v. Price*, 202 Neb. 308, 275 N.W.2d 82 (1979).

In conclusion, the evidentiary error was not prejudicial to defendant. *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). The State's case could not have been significantly less persuasive had the "fighting" evidence been excluded upon defendant's timely objection and motion to strike. See *State v. Whitmore*, 221 Neb. 450, 378 N.W.2d 150 (1985). The evidence did not cause a substantial miscarriage of justice. *State v.*

*Massey*, 218 Neb. 492, 357 N.W.2d 181 (1984); § 27-103(1). The claimed evidentiary error was harmless beyond a reasonable doubt. Defendant's convictions should be affirmed.

BOSLAUGH, J., dissenting.

I concur in the dissent of Judge Colwell.

In my opinion the decision in this case cannot be reconciled with our recent decisions in *State v. Guy, ante* p. 610, 419 N.W.2d 152 (1988), decided February 12, 1988, and *State v. Watkins, ante* p. 677, 419 N.W.2d 660 (1988), decided today. The evidence of guilt in this case is much stronger and the objectionable evidence much less prejudicial than in the *Guy* and *Watkins* cases.

It is also a matter of some interest that after Lenz had been arrested and given the *Miranda* warnings, he gave the police a statement denying any involvement in the robbery.

After conviction, Lenz wrote out a complete confession in his own handwriting, which is a part of the presentence report.