STATE OF NEBRASKA, APPELLEE, V. DAVID E. BROOMHALL, APPELLANT.

374 N.W.2d 845

Filed October 11, 1985.   No. 84-871.

S.J. Albracht of Lathrop, Albracht & Lathrop, for appellant.

Robert M. Spire, Attorney General, and Harold Mosher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The defendant, a 14-year-old boy whose motion to waive jurisdiction to the separate juvenile court was denied, was convicted of assault in the first degree and second degree sexual assault. He was sentenced to the Nebraska Penal and Correctional Complex for terms of 5 to 15 years and 3 to 5 years concurrently. On appeal to this court defendant assigns as error that the district court failed to grant defendant's motion for a continuance of the trial and that the court erroneously allowed certain opinion testimony into the record without proper foundation. We affirm.

On the evening of July 13, 1983, the victim, a 25-year-old nurse, was jogging alone in the city of Omaha. She was attacked, sexually assaulted, and brutally beaten about the head with a piece of firewood, causing brain tissue to protrude through the wound. According to the further testimony of the victim, she had an opportunity for a minute or a minute and a half to observe her assailant as he knelt on top of her.

Although she was contacted by the police the latter part of July, she was unable to talk to the authorities. The victim returned to the police station in August and related to Officer Marilou Lawson what had happened the night of her assault, and described the person who had attacked her. During the course of that interview, she was able to help with the drawing of a composite of her attacker.

The victim met with police officers a couple of days later and was handed a group of five photographs of young men and was able to identify one, the defendant, as her attacker. She also made an in-court identification of the defendant as her attacker at the trial in March of 1984, and at two preliminary hearings held in November and December of 1983.

Officer Lawson testified that the composite picture of the victim's attacker was printed in the local newspaper. The police received several calls following the circulation of that picture, naming the defendant as resembling the composite.

Defendant was arraigned on September 15, 1983, at which time trial was set for the next jury panel. His present counsel entered the case around November 1, 1983. According to the prosecution, the victim was available as a witness since August

of 1983. The record itself reveals conclusively that she was available as early as November 9, 1983, when she appeared at a hearing on a motion to transfer jurisdiction and testified in great detail about the attack. Defendant's counsel declined cross-examination. The victim appeared again on December 28, 1983, at a hearing to suppress identification, and testified to the attack in detail. Some 20 pages of the record are devoted to defense counsel's cross-examination regarding identity of the defendant.

This case went to trial on the first day of the jury term commencing March 5, 1984. Sometime preceding the prior jury term, which date is not apparent, counsel had requested that trial not commence then, and he was told by the court to be ready for the next panel. That was confirmed by a letter from the court dated February 15, 1984, which counsel stated he did not receive until February 27 because he had been out of town.

Hearing was had on Wednesday, February 29, 1984, on defendant's oral motion for a continuance, and on March 1 and 2, 1984, on his written motion. For the purpose of this appeal defense counsel's complaint was that he had been unable to interrogate the victim or to get a deposition from her attending physician, Dr. McKinney, so that he could obtain and talk to his own expert witness to delve into the matter of the victim's ability to recall the events of the attack. However, the victim had been available for deposition, it would seem, at least since November 9 when she appeared in court and testified. Although defense counsel stated that he still had not received authorization to take Dr. McKinney's deposition, there is no showing in the record that such authorization was needed or that he had asked for it and it had been denied to him.

The court was concerned about the welfare of the victim. Apparently, she was to have had an out-of-state evaluation preparatory to possible additional rehabilitation services. That appointment was canceled because of the trial, and, according to her physician, she could not get into that program until the trial was over. The court felt that she should not be further inconvenienced and delayed in possible rehabilitation efforts by a further continuance, and it denied the motions.

At the hearing on his motion for a new trial, the defendant

offered the testimony of Dr. Charles Golden, a neuropsychologist. He had reviewed Dr. McKinney's deposition regarding the nature and extent of the victim's injuries. Based on that information and his own training and experience, Dr. Golden gave as his opinion that the type of injuries suffered by the victim would have resulted in memory impairment, a memory loss, and interference from the date of the accident to the time of trial in March and that it was likely that the victim was not working—testifying—from a true memory but on the basis of things that had happened after the accident. He further testified that it would have been difficult, if not impossible, for her to recall observations made by her on the day of the attack as to a description of the attacker.

There was nothing in the testimony of Dr. Golden that indicated he was not available at the time of trial in March of 1984. He did state that defense counsel had talked to him about the case "some months ago," after the trial, and the date of his testimony was November 8, 1984. The only other reference to timing was made by defense counsel during argument, wherein he said that at the time the deposition of Dr. McKinney was typed up it was too late to get ahold of Dr. Golden.

There is no question but that Dr. Golden's testimony would have been relevant to defendant's defense. True, Dr. McKinney did testify on cross-examination that the victim could have suffered from amnesia. However, he also said that he, a neurosurgeon, was not qualified to give an opinion as to the victim's susceptibility to the power of suggestion. Therefore, it is necessary for us to determine whether it was error for the trial court to refuse a continuance so that, as an after-the-fact determination, Dr. Golden would have been permitted to testify.

Motions for continuances are addressed to the sound discretion of the court, and in the absence of a showing of an abuse of discretion, a ruling on such motions will not be disturbed on appeal. *State v. Denbeck*, 219 Neb. 672, 365 N.W.2d 469 (1985).

" 'In determining whether or not the trial court has abused its discretion in refusing to grant a continuance it is proper to look to the entire record in the case.' See, also, § 25-1148 R.R.S.

1943." *Kennedy v. State*, 171 Neb. 160, 166, 105 N.W.2d 710, 716 (1960).

The evidence adduced shows that defense counsel was involved with this case 4 months prior to trial. Although counsel complains of never having received a medical release which would have enabled him to take the deposition of Dr. McKinney, the record does not show a request was made for one or was required. As noted by the appellee, " '[w]here due diligence by the moving party has not been shown, the ruling of the trial court overruling a motion for a continuance for the purpose of securing additional evidence will not be disturbed.' Frese v. Michalec, 148 Neb. 567, 568, 28 N.W.2d 197, 197 (1947)." Brief for Appellee at 8.

We do not believe the trial court abused its discretion in denying the continuance.

In dealing with defendant's other assignment of error, that the court erred in allowing a police technician to give an opinion as to what substances he located in the area where the victim was found, it is necessary to supply some additional facts.

Gerold Klein testified that at approximately 11:30 on the evening of this assault, his dog rushed madly to the vestibule and was barking. Klein went to the door and found a woman, dressed in jogging clothes and covered with blood, sitting on the doormat, looking in the side windows of the door. He observed vomit on the step and was able to smell some about her. He called the rescue squad and later talked to the police. As he found out, the woman was the victim in this case.

Neb. Rev. Stat. § 27-701 (Reissue 1979) states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

As the witness was not qualified as an expert, the question is whether the subject was proper for a lay witness.

The relevant testimony is as follows:

Q. And based on your experience as a person and as a police officer did the substances found at the scene next to

the Klein house appear, at least in your opinion, to be that of human vomit, human feces?

MR. ALBRACHT: To which I object for the reason there is no proper and sufficient foundation for this witness to testify. He's not competent to answer that, Your Honor.

. . . .

THE COURT: He may answer. He's qualified to give a lay opinion as to what he feels it is.

A. In my opinion, the substance that appeared [in the pictures of the scene] to be vomit was vomit and the substances that appeared to be feces was feces.

The question, as presented by the prosecution, is whether the substances were *human* vomit and feces. The statute allows testimony rationally based on perception. There is nothing in the record that indicates that the witness could distinguish between human and nonhuman body waste. On this basis the question was objectionable. However, the technician's testimony was that the substances were "vomit" and "feces," without reference to their origin. Additionally, on cross-examination, the technician testified that he could *not* distinguish human waste from that of an animal, absent a chemical analysis. The result is that the witness gave an acceptable lay opinion to an unacceptable question.

In order to have reversible error the appellant must demonstrate that the error was prejudicial. "[T]he admission of irrelevant evidence is not reversible error unless there is prejudice to the defendant or he is prejudiced from having a fair trial." *State v. Bromwich*, 213 Neb. 827, 832, 331 N.W.2d 537, 541 (1983).

In light of the victim's eyewitness identification of the defendant, even if the statement was inadmissible, the error was harmless.

The judgment of the district court is affirmed.

AFFIRMED.