LINCOLN EAST BANCSHARES, INC., A CORPORATION, APPELLANT, V. J. MICHAEL RIERDEN, TRUSTEE, ET AL., APPELLEES, ROBERT A. WEIGEL ET AL., INTERVENORS-APPELLEES.

406 N.W.2d 337

Filed May 22, 1987.    No. 85-629.

David C. Pierson of Pierson, Ackerman, Fitchett, Akin & Hunzeker, for appellant.

Rodney P. Cathcart of Erickson & Sederstrom, P.C., for appellees.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The plaintiff commenced this action to enjoin the defendants from constructing a building which the plaintiff alleged would interfere with the flow of traffic between the properties owned by the parties, in violation of a prior agreement. The trial court found generally for the defendants, and the plaintiff has appealed.

The property involved lies along the south side of O Street in Lincoln, Nebraska, between 66th and 70th Streets. The plaintiff, Lincoln East Bancshares, Inc., owns Lot 73 and the east 30 feet of Lot 74, which lie east of 68th Street. The defendant J. Michael Rierden is the trustee of a trust which holds the title to Lot 74, except the east 30 feet thereof, and Lot 75, which lie between 66th Street and 68th Street and are west of and adjacent to the plaintiff's property. The defendant R-D Investment Company is the beneficiary of the trust and lessor of the property, and defendant ShopKo Stores, Inc., is lessee of the property. Both properties are part of a commercially zoned

area which is bounded by O Street on the north side, 70th Street on the east, 66th Street on the west, and a private street, referred to herein as N Street, which abuts the portion of the property owned by the defendants along the south side. The parties' properties are separated by 68th Street, which is a public street for 70 feet south of O and then a private street with a public easement from that point until it ends in a cul-de-sac.

At the time the action was commenced, a retail store building was being constructed on the defendants' property. When the plaintiff became aware of the construction and obtained a copy of the site plan, the petition was filed to enjoin the construction. The plaintiff alleged the building under construction would violate a restrictive covenant in an agreement which the predecessors in title of the parties had entered into in 1970. A hearing on that petition was held August 1, 1984, and the trial court viewed the property on that date. Based on the observation of the property and the language of the agreement, the trial court denied plaintiff's request for a temporary injunction.

Construction on the building continued, and plaintiff filed an amended petition, seeking a permanent injunction to enjoin the defendants from allegedly impeding the flow of traffic on their property, in violation of the 1970 agreement. A hearing on the amended petition was held January 10, 1985. Additional evidence, together with the testimony and evidence heard and received at the first hearing, was received into evidence. The trial court again denied the requested injunction, finding the 1970 agreement was designed to provide access to three specific streets and that the building did not inhibit such traffic.

The plaintiff has set forth six assignments of error. The plaintiff first contends the trial court erred in failing to find the 1970 agreement restricted the use of the defendants' property. That contention is not supported by the record.

A copy of the 1970 agreement was attached to the amended petition, and the agreement was received into evidence. In their answer to the amended petition the defendants recognized the existence of the agreement and alleged they had complied with its terms. At the second hearing the defendants objected to certain testimony by a plaintiff's witness on the grounds the

defendants had pleaded the agreement was valid and had complied with its terms. The court then asked, "The question here is whether there has been a violation of that exhibit?" The plaintiff's attorney replied, "Yes." The court then asked, "And everybody agrees that was in force or effect for whatever purpose?" The plaintiff's attorney again replied, "Yes." No evidence was presented to dispute the existence of the agreement or that it restricted the use of the defendants' property. Instead, the issue was the extent of the restriction. Moreover, the trial court specifically found the defendants' property was bound by the agreement. Therefore, the plaintiff's first assignment of error should be overruled.

The plaintiff next contends the trial court erred in finding the defendants had not breached the agreement. Plaintiff does not contend the agreement is ambiguous, but argues the plain meaning of the language clearly shows the extent of the restriction imposed upon the property. The plaintiff argues the agreement requires that all properties have access to 68th Street, 70th Street, O Street, and 66th Street, as well as easy access to all other property in the area without using the public streets. The defendants, also, do not contend the agreement is ambiguous, but argue that the agreement, when read as a whole, does not restrict the use of their property in the manner described by the plaintiff. The defendants contend the agreement requires only that access to the three named streets be provided.

The agreement contains several provisions which are relevant to this dispute. The purpose clause states:

WHEREAS, the parties hereto desire to establish a uniform flow of traffic through and upon their commercially zoned respective properties so as to make use of the access to and from the streets abutting said properties, namely 68th Street, "O" Street and 70th Street, through and over the various entrances and exits provided through such streets and along the separate properties of the parties, and so as to establish a mutually advantageous flow of traffic to and from such exits.

Paragraph 1 of the agreement states:

Each of the parties hereto shall have a right-of-way at all

times, in common with the owners of the other properties hereinbefore described . . . over the said commercially zoned property so as to permit a free flow of such traffic to and from any and all street exits to and from said respective properties; and the parties will maintain the driveways upon their respective properties in such a manner as to permit such flow of traffic between the several properties. The document hereto attached . . . is intended to show the intention of the parties with reference to such traffic flow; but it is expressly understood and agreed that any buildings shown on said exhibit are by way of illustration only, and that none of the parties are in any manner obligated to construct or develop in accordance with said exhibit, but that rather said exhibit is designed to show the intention of the parties to develop the traffic upon their several properties in such a manner as to permit the traffic to flow between their separate developments without using a public street and without creating traffic hazards.

The second paragraph states:

The right-of-way referred to in paragraph 1 above shall not be less than thirty (30) feet in width on straight portions thereof . . . . The location of such rights-of-way may be varied by the respective parties from time to time in such manner as each party shall deem most convenient . . . . Neither of the parties shall build or maintain or permit to be built or maintained any structure on a driveway which will interfere with the flow of traffic to and from the premises, except as hereinbefore provided; and in the event any of the parties hereto shall desire to change the traffic pattern . . . such party shall provide adequate substitute means of ingress and egress to and from the property of the other parties, so as to provide a flow of traffic as contemplated by the parties.

The agreement was entered into on August 3, 1970, by Earl R. Taylor and Hazel Petersen as first parties, Robert A. Weigel as second party, and Gateway Medical Village, Inc., as third party. Taylor and Petersen (hereafter Taylor) owned Lots 45 and 51 and part of Lot 46, Weigel owned the remainder of Lot

46, and Gateway owned Lot 50. In the intervening years the property has been subdivided, and the ShopKo store is now situated on a portion of the Taylor property, while the plaintiff's bank building is located on land also formerly owned by Taylor. Exhibit 2, referred to in the agreement as "the attached document," is a rough sketch of a possible plan for development of the area.

Royce Harper, an assistant attorney general for the State of Nebraska, testified that in 1970 the city widened O Street, and portions of properties owned by Taylor and Weigel were condemned. Harper was involved with these condemnation proceedings. At that time the property abutting 68th Street, on both sides, was owned by Taylor. Weigel's property line was located about 56 feet east of 68th Street, which line is now the east line of the Lincoln Bank East property. Harper testified that during the negotiations with Weigel in the condemnation proceedings, it was proposed that Taylor have access to Weigel's property, while the latter have access to 68th Street. Harper testified the state was ultimately a party to an agreement between Taylor and Weigel, wherein the state agreed to pave the easement from the Weigel property to 68th Street as part of its settlement with Weigel. Harper stated the whole agreement was designed to provide access from the Weigel property to 68th Street.

Douglas Brogden, the former director of planning for the city of Lincoln, testified he also had been involved with the acquisition of property due to the widening of O Street in 1970. He testified the problem created was access to the property from O and 70th Streets. Brogden testified the original tracing for exhibit 2 was prepared under his direction, and in designing the sketch he had considered the possible development of buildings on the property, offstreet parking, the relation and design of parking lots to curb cuts, and the relationship of potential future ownership patterns and allowing traffic to "move in a pattern of one ownership to another ownership easily." His purpose in designing the development was to show satisfactory access to O without numerous curb cuts and access across the property without the use of O Street.

Richard Haden, a traffic engineer for the city of Lincoln,

testified that a traffic signal has now been installed at the intersection of 68th and O Streets. He also testified the city has planned to extend the median on 68th Street and prevent left turns from the bank's curb cut north of the bank on 68th Street. Haden testified that 68th Street is a public street for a distance of 70 feet south of O and a public right-of-way or private property with a public access easement from there on (68th Street Place). He testified that N Street is also a private street with a public access easement. He further testified that N Street is about 26 feet wide at its east end and about 32 feet wide at 66th Street. He stated there is approximately 18 feet for public travel on N Street because parking is permitted on one side. On cross-examination he testified that two-way traffic is possible on N Street from 66th to 68th Street, and there is no impediment to traffic traveling from N Street to O Street on 68th Street. He further testified the city had denied a request to install a curb cut on the west side of 68th Street.

Joseph Berchenko, a plan examiner with the codes administration in Lincoln, testified he had reviewed ShopKo's application for a building permit. The department determined the appropriate setback requirements and issued the permit. Berchenko testified there was "a little jog" in the property line where the building abuts the dedicated right-of-way on 68th Street, so the setback was figured from the right-of-way line rather than from the centerline of the street. To determine the setback from 68th Street Place, the witness used the centerline of the street, which was the actual property line. ShopKo had requested the change in procedure, which, Berchenko testified, was a routine kind of request.

James Krieger, executive vice president of Selection Research, Inc. (SRI), testified SRI owns property located on the cul-de-sac of 68th Street Place and the adjoining lot to the east of that street. Krieger testified SRI built the private portion of 68th Street and N Street. The streets were constructed prior to ShopKo's construction and had been financed by SRI and the plaintiff. He further testified the construction of the ShopKo store affected the traffic flow on N Street.

George Hancock, a commercial sales manager and appraiser employed by Austin Realty Company, testified it was his

opinion that the construction of the ShopKo store had reduced the value of the plaintiff's property by $75,000. Hancock based this opinion on the loss of visibility and accessibility caused by the building. On cross-examination he testified the ShopKo building had not affected access from the bank to 68th Street or O Street and that an additional route, from 66th Street via N Street, to 68th Street is now available as well.

James F. Nissen, president of Lincoln East Bancshares, testified the majority of the bank's customers reach the bank by traveling along O Street to 68th Street. Nissen testified that 68th Street is located immediately west of the bank property, and there are two access points from the bank to 68th Street. Customers can approach from the east across the other shopping areas, and there is also access from 70th Street to the bank. Nissen testified the defendants' property is located immediately to the west of the bank between 66th and 68th Streets. Nissen first learned of the potential location of the ShopKo building in June of 1984 and then determined it was contrary to the 1970 agreement. Nissen testified the ShopKo building "makes the bank building invisible until you are very close to the intersection" of O and 68th Streets. It was his opinion this effect would diminish the bank's business and the value of the property. On cross-examination Nissen testified that the ShopKo building did not close off the curb cut north of the bank building used by the bank's customers on 68th Street and that the access from the bank onto 68th Street was not affected by the ShopKo building. Nissen testified that access across ShopKo's property from 66th Street to 68th Street would benefit the bank. He testified that ShopKo customers would have to cross 68th Street to reach the bank property regardless of where the building had been constructed because the bank's property is completely bounded on the west, and ShopKo on the east, by 68th Street. Nissen testified there were no curb cuts on the west side of 68th Street.

Plaintiff contends this evidence clearly shows the agreement requires the free flow of traffic from the defendants' property to all other property in the area. Plaintiff argues that since the location of the easement is not specified, a convenient, reasonable, and accessible way must be provided. Plaintiff

argues the defendants have failed to provide such access and that N Street is an unacceptable substitute because it is not 30 feet wide. The defendants respond that since the agreement specifically requires access to three named streets and the building does not interfere with such access, the agreement has not been violated.

On appeal, the record of an equity action is reviewed de novo, and it is the duty of this court to reach independent conclusions as to the findings required by the pleadings and evidence. Neb. Rev. Stat. § 25-1925 (Reissue 1985).

Further, in an appeal of an equity case, we give proper consideration to the fact that the trial court inspected the property and that its examination constituted evidence bearing upon the weight given to the testimony of the various witnesses. *Newson Constr. Co. v. Calvary Assembly of God Church*, 193 Neb. 556, 227 N.W.2d 886 (1975).

> A restrictive covenant is to be construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it; the location and character of the entire tract of land; the purpose of the restriction; whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers; and whether it was in pursuance of a general building plan for the development of the property.

*Lund v. Orr*, 181 Neb. 361, 363, 148 N.W.2d 309, 310-11 (1967). Restrictions as to the erection or use of buildings or other structures will be so construed, if possible, as to effectuate the intent of the parties. *Hogue v. Dreeszen*, 161 Neb. 268, 73 N.W.2d 159 (1955).

The record shows that the circumstances surrounding the adoption of the restrictive covenant were the widening of O Street and the signators' concern for access to that street and 68th Street. The location of the entire tract of land and its commercial character make access to O Street, 68th Street, and 70th Street vital to its economic survival. The stated purpose of the agreement was to "establish a uniform flow of traffic through and upon their commercially zoned respective properties . . . to make use of the access to and from . . . 68th

Street, "O" Street and 70th Street . . . and so as to establish a mutually advantageous flow of traffic to and from such exits." There is no mention of any street which might subsequently be developed and affect the property nor any mention of cross-access to the entire tract of land in the purpose clause. The covenant was designed to benefit the grantor, the grantee, and subsequent purchasers by providing access to those named streets. There is no evidence of a common building plan for the development of the property.

Exhibit 2, as discussed earlier, was merely a sketch of one possible development of the area. In that sketch the buildings were set back to the southern property lines of all property adjacent to O Street, with parking lanes on the northerly half. Similarly, the buildings were set back to the western boundary of property adjacent to 70th Street, with parking lanes on the easterly half. If the property had been developed according to this plan, it would have been possible to drive the length and width of the entire area without using a public street, by traveling through the parking areas and common driveways.

A plat map in the record shows the property was not developed according to exhibit 2. In particular, the plaintiff's building was not built at the southernmost edge of its property, and there are no parking lanes on the northern portion of its property. Similarly, the buildings on the property adjacent to 70th Street are not located as shown in exhibit 2. As a result, it is not possible to drive directly across the property in the manner originally envisioned. The development of the property has been consistent, however, with the purpose of the 1970 agreement, in that the properties do have access to the three named streets.

The language of the agreement shows that the parties' intention was to provide access to the three named streets from the various properties of the signators. The purpose clause clearly states the agreement was designed to provide such access. Paragraph 1 requires each property owner to provide a right-of-way to permit "a free flow of such traffic to and from any and all street exits." This language, read in the context of the purpose clause, requires the free flow of traffic across the properties to street exits on the three named streets. Paragraph

2 provides that all rights-of-way referred to in paragraph 1 must be 30 feet wide. The agreement as a whole requires only that each property owner provide access across his property to street exits for the three named streets.

The record shows the construction of the ShopKo building has had no effect on the plaintiff's access to the three named streets. The plaintiff's customers have the same access since the construction as they had before. In addition, the bank's customers can utilize N Street to travel from 66th Street to 68th Street. Upon considering the circumstances surrounding the agreement, the intent of the parties, and the language of the agreement, we find the defendants have not violated the 1970 agreement.

Plaintiff's next three assignments of error concern the exclusion of testimony concerning title matters in general, the defendants' attempts to procure title insurance before constructing the building, and the exclusion of testimony by an original signator of the agreement.

At the outset we note that, generally, the reception of evidence is within the broad discretion of the trial court, and to obtain reversal on the grounds of the exclusion of evidence, a clear abuse of discretion must be shown. *Childers v. LCW Apartments*, 214 Neb. 291, 333 N.W.2d 677 (1983).

This principle has been applied to rulings concerning the reception of evidence, the admissibility of which turns on its relevancy; evidence collateral to the main issue, or which bears remotely on issues involved; and to rulings relating to cumulative evidence, opinion evidence, evidence concerning matters of common knowledge, and evidence which is competent yet would tend to excite undue prejudice. *Nusz v. Wells*, 214 Neb. 1, 332 N.W.2d 204 (1983).

The excluded evidence first complained of was testimony concerning the legal effect of the 1970 agreement on the defendants' property. The trial court excluded the testimony on the grounds it invaded the province of the court, called for a legal conclusion, and was not a proper subject of expert testimony. The exclusion of this testimony was not a clear abuse of discretion. This testimony was in the form of opinion evidence, which, as stated above, the trial court has broad

discretion to receive or exclude. Further, the trial court viewed the site and made specific findings regarding the legal effect of the easement. As noted earlier, such examination constituted competent evidence which we will consider in reaching our findings. *Newson Constr. Co. v. Calvary Assembly of God Church*, 193 Neb. 556, 227 N.W.2d 886 (1975). This assignment of error is without merit.

Plaintiff next contends that evidence concerning the defendants' attempts to procure title insurance prior to the construction of the building should have been admitted. This testimony was excluded on the grounds that it was not relevant to the issues before the court. The exclusion of this testimony was within the broad discretion of the trial court. *Nusz v. Wells, supra.* The objection was based on the fact that any contract for title insurance affected only the defendants and the insurer and had no bearing on the plaintiff. In view of the facts of the case, we find the trial court did not abuse its discretion in excluding this testimony.

Plaintiff's final contention is that the trial court erred in excluding the testimony of an original signator of the agreement, Robert A. Weigel. This testimony was excluded on the basis of the parol evidence rule. Defendants contend this issue is not properly before this court because the plaintiff failed to make an offer of proof. Defendants' argument is unpersuasive because the substance of the evidence was apparent from the context.

Neb. Rev. Stat. § 27-103(1) (Reissue 1985) provides that
> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . (b) . . . the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

See, also, *Birkel v. Hassebrook Farm Serv.*, 219 Neb. 286, 363 N.W.2d 148 (1985).

Once an agreement is found to be a complete agreement and is not challenged as ambiguous or as the result of mistake or fraud, the written agreement is the only competent evidence of the agreement between the parties, and any negotiations by the parties prior to the execution are excluded by the parol evidence

rule. See, *Erickson v. Newell*, 183 Neb. 641, 163 N.W.2d 286 (1968); *Preferred Pictures Corp. v. Thompson*, 170 Neb. 694, 104 N.W.2d 57 (1960). Since the agreement appears to be a fully integrated agreement and there is no contention of ambiguity, fraud, or mistake, the trial court properly excluded the testimony.

The judgment of the district court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., not participating.