STATE OF NEBRASKA, APPELLEE, V. DAVID E. BROOMHALL, APPELLANT.

417 N.W.2d 349

Filed January 8, 1988.    No. 87-045.

Donald W. Kleine of Kleine Law Office, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

HASTINGS, C.J.

Defendant has appealed from an order of the district court which denied his motion for postconviction relief. Errors assigned include denial of defendant's claims of ineffective assistance of counsel due to failure to call a key witness and failure to fully investigate and present all possible defenses during the course of his trial.

The trial judge drafted a comprehensive and analytical order which systematically answered each of the defendant's contentions set out in his motion. As to defendant's claims of ineffective assistance of counsel relating to the investigation and presentation of facts and defenses, suffice it to say that we agree with the trial court that they are wholly without merit. We find it unnecessary to set forth repetitiously, for approval, those specific findings. Those claims of deficiency are swallowed up either because they did not exist or because they were the result of justifiable trial strategy.

"The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves ineffective, will not, without more, sustain a finding of ineffectiveness of counsel." State v. Fries, 224 Neb. 482, 485, 398 N.W.2d 702, 704 (1987). The findings of the trial court in a proceeding for postconviction relief will be upheld on appeal unless clearly erroneous. State v. Rubek, 225 Neb. 477, 406 N.W.2d 130 (1987).

Accordingly, we will discuss in any detail only the claim that counsel was ineffective in failing to call as a witness Dr. Charles Golden, a professor of medical psychology at the University of Nebraska Medical Center. In analyzing that contention, we are

bound by the following rule, among others:

> When the defendant in a postconviction motion alleges a violation of his constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his case as a result of his attorney's actions or inactions.

*State v. Rubek, supra* at 479, 406 N.W.2d at 132. Also, a defendant seeking reversal of a conviction on the basis that counsel's assistance was deficient must establish a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different; a reasonable probability consists of a probability sufficient to undermine confidence in the outcome. *State v. Peery*, 223 Neb. 556, 391 N.W.2d 566 (1986).

The basic facts in this case may be found in *State v. Broomhall*, 221 Neb. 27, 374 N.W.2d 845 (1985). The description and identification of the defendant as the victim's attacker was a critical element of this case. Her memory was strenuously challenged at trial, and her recall ability was undoubtedly an essential element in satisfying the requirement of guilt beyond a reasonable doubt.

The testimony of Dr. Golden, which was considered to be of such significance, was produced by testimony at the motion for a new trial. It was set out in substance in our opinion.

> Based on that information [Dr. McKinney's deposition] and his own training and experience, Dr. Golden gave as his opinion that the type of injuries suffered by the victim would have resulted in memory impairment, a memory loss, and interference from the date of the accident to the time of trial in March and that it was likely that the victim was not working—testifying—from a true memory but on the basis of things that had happened after the accident. He further testified that it would have been difficult, if not impossible, for her to recall observations made by her on

the day of the attack as to a description of the attacker. *Id.* at 30, 374 N.W.2d at 847.

In denying defendant's claim of error because of the failure of the trial court to grant a continuance at the time of trial so as to allow defendant to obtain Dr. Golden's testimony, we concluded that in the absence of a showing of due diligence by the moving party, a ruling by the trial court in overruling a motion for a continuance in order to obtain additional evidence will not be disturbed. In reaching our conclusion, we conceded in our opinion that Dr. Golden's testimony would have been relevant to defendant's defense. The substance of defendant's argument is that if this court agreed that the missing evidence was relevant, but had suggested lack of diligence of counsel to obtain that evidence in a timely manner, that must constitute misconduct.

Defense counsel stated at the hearing on the motion for a new trial that he did not talk to Dr. Golden before trial. He said that he had never heard of him before he talked to his witness, Dr. Emmet Kenney, who told him there was not anything Dr. Kenney, as a psychiatrist, could do for the defendant; that counsel should go to Dr. Golden; and that Dr. Golden was the expert in this field in the whole nation.

This was further amplified during defense counsel's testimony on the motion for postconviction relief. Counsel stated that he never did have the victim evaluated as to her possible loss of memory. He suggested that this was due to the fact that he first needed to take the deposition of Dr. McKinney, who was the neurosurgeon who had treated the victim, and he was not able to do that until the Saturday prior to the Monday of the first day of the trial. He stated that he had asked the prosecuting attorney for Dr. McKinney's deposition at least a month prior to trial. A motion or request to take the deposition was never filed with the court.

In opposition to this testimony of defense counsel, the prosecuting attorney testified that a month or a month and a half before trial he had told defense counsel to let him know when counsel wanted to take Dr. McKinney's deposition, and he would set it up. The prosecutor further stated that no request was ever made to take that deposition until February 29, 5 days

before the trial began on March 5, 1984.

It appears from the record that defense counsel had been in touch with Dr. Kenney, who was to be the expert witness for the defense, sometime before the deposition of Dr. McKinney was taken, because he "wanted him to review it and give us any input that he could relative to the victim's injuries and her ability and power to recollect, her ability and power to recall, her ability to — or the possibility of her being subject to the power of suggestion." According to defense counsel, when the deposition of Dr. McKinney was finally taken, it was discovered that the witness believed that the victim did have the power to recall on her own and that the injury would not inhibit her power to recollect and relate accurately.

It was apparent from the beginning that the victim had sustained severe head injuries and had difficulty in communicating or verbalizing the facts describing the events that had caused her injuries. The police officer, James Wilson, testified that in his investigation he would have to interview the victim by a series of leading questions. Defense counsel stated that he had talked to most of the police officers long before the trial. Therefore, he should have known of the results of their investigation regarding the condition of the victim. As a matter of fact, he testified at the postconviction hearing that at the time he received the police reports, early on in his representation of the defendant, he also received some medical reports and knew that the victim had sustained a severe head injury. He was also aware that one or more of the police officers believed at one time, at least, that someone was suggesting information to the victim that her injuries were caused by something other than a traffic accident, and that they believed that statements made by the victim for about the first 10 days after this incident were subject to doubt.

Defense counsel was aware of the fact that the main basis of the State's case was the victim's eyewitness identification of her attacker. Counsel had represented the defendant since September or October of 1983. Counsel's first contact with the victim appears to have been on November 9, 1983, when she testified at a hearing on defendant's motion to transfer the case to juvenile court. The victim testified at some length about the

attack on her and identified the defendant as her attacker. Defense counsel chose not to cross-examine her.

The second opportunity which counsel had to hear the victim's testimony occurred on December 28, 1983, at a hearing on defendant's oral motion to suppress the victim's identification of the defendant, and other related matters. During that hearing, Marilou Lawson, a police officer of the City of Omaha, testified and was cross-examined at some length by defense counsel relative to the use of a composite drawing to learn the identity of the victim's attacker from witnesses who had seen the drawing. The witness related how the victim had described her attacker for the artist, and after the composite was completed, that the victim stated that it fairly and accurately described her attacker.

At this same hearing, the victim testified and stated her recollection of the identifying characteristics of her attacker. Her memory of the events, her description of the attacker, and other items of recall such as what the various police officials were wearing during different interviews with her were tested by quite extensive cross-examination by defense counsel.

Defense counsel's next appearance in court seems to have been on February 29, 1984, to argue a motion to continue the trial of the case, which had been set to begin on March 5. The record discloses that the court had informed defense counsel "prior to the last jury panel" that the case would be tried at the panel starting March 5. This apparently was confirmed by a letter from the court dated February 15. It is not known from the record when counsel received that letter. Counsel's reason for requiring a continuance was to obtain Dr. McKinney's deposition. Counsel appeared again in court on March 1, 1984, to argue a written motion for continuance because, among other reasons, he had not been able to get a doctor to review "this thing" or to give him any defense help on the lack of memory proposition.

In spite of the last-minute efforts to obtain medical support for a defense of lack of memory, it must have been apparent at least as early as November 9, 1983, that evidence of the victim's ability to remember and relate accurately her recollection of the events of the brutal attack on her would be of immense

importance in this case.

Although the record does not disclose when defense counsel settled on the use of Dr. Kenney as his expert witness, it had to have been some time before he started to make arrangements to take the deposition of Dr. McKinney. Dr. Kenney was never called as a witness, but, according to the testimony of defense counsel on the postconviction hearing, Dr. Kenney, without reservation, stated that he could be of no help in the field of memory but, as previously stated, Dr. Golden was the recognized expert in that field. There appears no logical reason why the search for Dr. Golden, who had been located in Omaha for the past 7 years, could not have begun and proven fruitful long in advance of the March 5 trial date. Another defense lawyer knew of and had used Dr. Golden as a defense witness. It would seem that ordinary diligence on the part of defense counsel would have required as much.

Although the court is entirely sympathetic with the pressures and deadlines that ordinarily competent and active lawyers are subjected to, we must find in this instance that counsel did not perform as a lawyer possessing ordinary training and skill in the criminal law should have done.

It is then necessary to determine whether defendant was prejudiced by that failure. Is there a reasonable probability that but for counsel's deficiency in this instance the result of defendant's trial would have been different; i.e., was there such a probability as to undermine confidence in the guilty verdict rendered by the jury in this case?

At the risk of redundancy, we say that the guilt of the defendant rested upon and resulted from the believability of the testimony of the victim. Without her testimony, there was no evidence upon which he could have been convicted.

The jury chose to believe that defendant was the attacker in this case because the artist's sketch based on her description was identified by many witnesses as a portrait of the defendant and the victim identified the defendant in open court as her attacker. However, there was a period of time following this savage attack when the victim could only speak as the result of suggestions and leading questions. One or more of the police officers were of the belief that her recollection of the events was

induced by the pressures of other people.

Dr. McKinney, the victim's neurosurgeon, testified at trial that the victim's injury would have affected her capacity for instant recall. However, he testified that he would not expect the victim's injury to have interfered with her distant memory. Although the witness stated that he could not give an expert opinion as to whether one with such an injury would be subject to the power of suggestion, he stated that in his experience it had not. Dr. McKinney made no effort during his treatment of the victim to determine whether she suffered from amnesia.

On the other hand, the testimony of Dr. Golden, given at the hearing on the motion for a new trial, was strongly supportive of a finding of amnesia and the possibility of confabulation. He stated that, based on the injury, he would expect to find "disruption of memories right around the event . . . for at least several days on either side of the event . . . ." He also noted the possibility of "confabulation" on the part of the victim in trying to fill in "lapses" in her memory. He stated that "[t]he power of suggestion plays a very big role in the patients" and that at the time of the victim's testimony "[i]t is likely at that late a date that the person is not working from a true memory but from some — on the basis of things that have happened subsequent to the event." At the time that she testified, he agreed, "her memory [would] be suspect to inaccuracy in her power to recall."

The testimony of Dr. Golden, had it been presented to the jury, would in our opinion have been a powerful influence on the thinking of the jury as to the accuracy and reliability of the victim's testimony, at least to the extent that its absence undermines our confidence in the guilty verdict rendered by the jury.

The trial court found that defense counsel had talked to Dr. Golden by the evening of the opening day of trial, March 5, and had until March 9, the day the defense rested, to have conferred with Dr. Golden and to present his testimony "if counsel had desired to present it during the trial rather than saving it for the Motion for New Trial if he lost."

The State argues that such a decision, if made by defense counsel, was a matter of trial strategy which does not sustain a

finding of ineffectiveness of counsel. It is difficult, if not impossible, to understand how the failure to call a highly qualified and apparently credible witness to refute the most important ingredient of the State's case—witness credibility—could by any stretch of the imagination amount to reasonable trial strategy. Certainly defense counsel did not advance such reason during his testimony.

We have previously determined that the trial court did not err in failing to grant defendant a continuance to obtain and present the testimony of Dr. Golden; we have no alternative but to determine now that counsel should have done so, and his failure in that respect amounts to a denial of a fair trial to the defendant.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GRANT, J., dissenting.

I respectfully dissent. In *State v. Broomhall*, 221 Neb. 27, 374 N.W.2d 845 (1985), we affirmed defendant's conviction, holding, among other things, that the trial court did not abuse its discretion in refusing defendant a continuance for the purpose of seeking additional expert medical testimony. Now, we hold that defendant should be granted postconviction relief because an additional expert witness was not called by defendant's counsel. It appears we are now furnishing relief that we earlier denied, on the basis of counsel's conduct rather than the system's decisions.

We have held, as set out in the majority opinion, that the findings of the trial court in a proceeding for postconviction relief will be upheld on appeal unless clearly erroneous. *State v. Rubek*, 225 Neb. 477, 406 N.W.2d 130 (1987). In its order denying postconviction relief, the trial court found:

Trial counsel testified that he was not prepared for trial prior to February 29, 1984, however, by March 5, 1984 he was prepared. The record in this case reflects that he performed at least as well as any other criminal defense attorney in the Omaha area and was prepared with Dr.

McKinney's deposition and had talked to Dr. Golden by the evening of March 5, 1984, the opening day of trial. Defendant did not have to present evidence until 1:30 p.m. on March 8, 1984 and did not rest until the morning of March 9, 1984. Therefore, there was sufficient time to have conferred with Golden as to his testimony and presented same if counsel had desired to present it during the trial rather than saving it for the Motion for New Trial if he lost.

Effectiveness of counsel is not to be judged by hindsight. The record indicates a conscientious effort on trial counsel's part to protect the interests of the defendant.

(Emphasis in original.)

The victim in this case was severely injured. In reviewing trial counsel's actions, we must not lose sight of defense counsel's thoughts in choosing to call, or not call, a particular witness. Counsel must have been concerned about a possible adverse effect on the jury if the victim were subjected to further attacks on her credibility by producing a medical witness whose testimony, in effect, says the victim is not testifying from her memory but from subsequent suggestion. Earlier testimony was received which indicated the victim originally thought she had been struck by a hit-and-run car. The point was before the jury, although not buttressed directly by medical testimony. At some point, a jury will say "enough," and such additional testimony becomes counterproductive to the purposes for which it is offered.

Defense counsel had seen the victim testify at the motion to transfer the case to juvenile court and at a suppression hearing, both courtroom settings, so to speak. Additionally, counsel had interviewed the victim. Apparently, counsel was convinced of the effective way in which the victim presented her testimony, as evidenced by the fact counsel did not cross-examine the victim during the trial (after he explained the matter to defendant and his parents and received their permission to so act). The gist of the trial court's finding is that defense counsel could have called Dr. Golden, if he wished.

Our "Monday-morning quarterbacking" of defense counsel

may result in the victim's again being put through a very difficult procedure. I believe the record supports the trial court's finding that defendant's counsel "performed at least as well as any other criminal defense attorney in the Omaha area . . . ." I would affirm.

SHANAHAN, J., and COLWELL, D.J., Retired, join in this dissent.